**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **STEVEN GLEN SMITH,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **3:10-CV-0343-B (BK)** |
| | § | |
| **RICK THALER,  Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and Special Order 3, this case was

referred for findings, conclusions and recommendation.  Petitioner Steven Glen Smith, a state

prisoner represented by retained counsel, filed a petition for writ of habeas corpus under 28

U.S.C. § 2254.  For the reasons that follow, it is recommended that the petition be denied.

**I.  BACKGROUND**

In 2003, Petitioner was indicted for sexual assault to which he pled not guilty.  *See State

v. Smith,* No. F03-34509-U (291st Judicial District Court, Dallas County).  During the first trial,

the jury became deadlocked and the judge declared a mistrial.  The second trial resulted in a

guilty verdict, and on September 30, 2005, the jury sentenced Petitioner to ten years'

confinement and a $10,000 fine.  On appeal, his appointed counsel filed a brief pursuant to

*Anders v. California*, 386 U.S. 738 (1967).  After reviewing the record, counsel's brief, and

Petitioner's *pro se* response (which raised several issues), the court of appeals agreed the appeal

was frivolous and without merit and affirmed the judgment of conviction.  *See Smith v. State*,

2007 WL 642577, No. 05-06-00183-CR (Tex. App. - Dallas, March 5, 2007, pet. ref'd )

(unpublished *per curiam*).

Thereafter, Petitioner, through retained counsel, filed a state habeas application under Texas Code of Criminal Procedure, Article 11.07, raising the claims at issue in this federal petition. *Ex Parte Smith*, No. WR-71,424-01, SHCR (2359300) 2-75.[1]  The trial court and the state agreed that Petitioner had received ineffective assistance of counsel on appeal as a result of counsel's filing the *Anders* brief, and that he was entitled to an out-of-time appeal.  The Texas Court of Criminal Appeals (TCCA) twice remanded the case, requiring the trial court to obtain affidavits from Petitioner's trial and appellate attorneys and to make further findings.  SHCR (2365827) Order filed Mar. 25, 2009.

On February 10, 2010, before receiving the trial court's second supplemental findings, the TCCA denied habeas relief, concluding, based on a review of the entire record and counsel's affidavits, that "Applicant ha[d] not meet [sic] his burden to show that he received ineffective assistance of counsel at any stage of his proceedings." *Ex parte Smith*, 2010 WL 456875 (Tex. Crim. App. 2010) (unpublished *per curiam*) (Keller, P.J., dissenting).

Thereafter, Petitioner filed this timely federal petition, challenging the constitutionality of the statute under which he was convicted and claiming ineffective assistance of counsel at trial and on direct appeal.  Respondent submitted an answer, along with a copy of the state court record, denying each claim on the merits.  Petitioner filed a reply.

---

[1] The Court adopts the same citations to the state court record used in Respondent's Answer: State Habeas Clerk's Record ("SHCR"), followed by the Event ID number in parentheses and the page number; Reporter's Record ("RR"), which is the trial transcript, testimony, preceded by the volume number and followed by the page number; State's Exhibit (SE), followed by the exhibit number.

## II.  SUMMARY OF THE EVIDENCE

Petitioner was the pastor of the Family of God Church of the Bible in Irving, Texas, a non-denominational church, which he founded after graduating from seminary.  5 RR 18, 102.  Because the church did not have a building, it met in the homes of its various members.  5 RR 16-18, 102.  Since Petitioner was the only pastor, he did all the preaching/teaching, wrote the curriculum, performed marriages, conducted funerals, and provided all pastoral counseling.  5 RR 20, 46, 38-39; 6 RR 37-43, 141-43; SE 1-5.

Christy Downey, the Complainant, testified that she was 41 years old, had been a legal secretary for 20 years, had known the Petitioner since 1986, and had been a member of the church for many years.  5 RR 18, 20-24.  In addition to seeing Petitioner for church meetings, Christy Downey met him for pastoral counseling regarding her father's suicide, her grandfather's death from diabetes, and her own depression stemming from those events, and also for premartial counseling.  5 RR 18, 20-24.  The counseling sessions took place either in Christy Downey's apartment or Petitioner's home.  5 RR 22.  Downey testified that Petitioner was her only pastor and spiritual adviser and that she became emotionally dependent on him as a result of the many years of sharing intimate details of her life with him and receiving his valid spiritual advice.  5 RR 22-25.

The first sexual activity between Petitioner and Christy Downey occurred in the fall of 1999.  5 RR 32-33.  Petitioner called Christy Downey and came to her apartment, with her permission, to pray with her before returning home to his wife and daughters.  5 RR 27.  After speaking with Christy Downey about her grandfather and her depression, Petitioner began telling her of his own feelings of depression, marital problems, and suicidal thoughts.  *Id.*  He told her

3

the church and his family would be better off without him.  5 RR 28.  These revelations "linked"

Christy Downey emotionally back to her father and his suicide.  *Id.*  After praying and hugging

on the couch, as they always did during counseling sessions, Petitioner asked Downey to "lay on

top of him."  5 RR 29.  She testified that she did as she was asked because she was trying to help

Petitioner and was afraid he would commit suicide.  5 RR 30.  Petitioner began to stroke her and

became erect.  *Id*.  He then asked her to get a towel.  *Id*.  When she returned with the towel,

Petitioner had unzipped his pants and had his penis sticking out.  *Id*.  Downey testified she then

felt emotionally obligated to masturbate him to ejaculation with her hand.  *Id*.  Subsequently,

Petitioner sat on Downey's bar stool and wept while speaking about his marriage.  5 RR 31.

Downey testified she had five sexual encounters with the Petitioner, all in her apartment,

and all following the same pattern –  i.e., Petitioner would call her from the parking lot of her

apartment complex or close by to say he was coming to her apartment; he would inquire about

her grandfather and her feelings of depression; he would then tell her about his depression and

suicidal thoughts, followed by the sexual activity.  5 RR 32-33.  Christy Downey testified that

during two of those encounters, Petitioner penetrated her vagina with his fingers.  5 RR 33-35.

She stated these encounters left her numb, and that she asked the Lord to assist her because she

did not know how to help Petitioner.  5 RR 35-36.  Downey ultimately began to see that

Petitioner was using her sexually despite her "vulnerable" state, however, she "did not

understand how to tell him no."  5 RR 36.

Kendra McGarrrahan and Nina Dunbar Treat also testified about sexual encounters with

Petitioner and their own emotional dependence on Petitioner for spiritual guidance.  5 RR 102-

24, 163-83.  The State then introduced the testimony of Dr. Michael Gottlieb, a forensic

psychologist who specialized in the area of sexual misconduct among professionals.  6 RR 87-88.

After interviewing Christy Downey for eight hours and administering two psychological tests,

Dr. Gottlieb concluded that she had become emotionally dependent on Petitioner as her spiritual

advisor, and that she had participated in the sexual activity because of the exploitation of her

emotional state.  6 RR 120-21, or 87-138.

During the punishment phase of the trial, three additional victims testified that Petitioner

had emotionally manipulated and sexually abused them.  Cindy Latour, Kendra's mother,

testified that Smith had an inappropriate sexual relationship with her, while he was abusing her

daughter.  7 RR 14-20.  Amy Sanderson testified about Petitioner counseling her and sexually

abusing her during two different periods of time.  7 RR 29-36.  In addition, Cindy Latour testified

that Petitioner had admitted to having a 15-year physical relationship with his wife's sister while

she was living with them.  7 RR 20.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) precludes habeas corpus

relief unless the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The AEDPA standard is not only "difficult to meet," but also "highly

deferential" to state-court rulings, in effect "demand[ing] that state-court decisions be given the

benefit of the doubt."  *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 1398 (2011)

(quotations and quoted cases omitted).

5

Petitioner asserts the TCCA's refusal to address the constitutionality of the statute under which he was prosecuted and to give any reason for rejecting the trial court's agreed findings that he had received ineffective assistance of counsel on appeal is not entitled to AEDPA deference. (Doc. 1, Mem. at 54.)  He states the trial court's "findings should carry more weight than the inexplicable rejection of them by the Court of Criminal Appeals."  (*Id.* at 54.)  However, section "2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 785 (2011) (section 2254(d) applies even to summary denial).

Under section 2254(d)(1), this Court's inquiry is limited to whether the state court's application of Supreme Court precedent was unreasonable.  "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'"  *Richter*, 131 S. Ct. at 785 (emphasis in original).  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Id.* at 784.  To assess whether a petitioner has made this showing, the "habeas court must determine what arguments or theories ... could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court."  *Id.* at 786. "If there is any objectively reasonable basis on which the state court could have denied relief, AEDPA demands that [the habeas court] respect its decision to do so."  *Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011) (*per curiam*).

Mindful of the deference due the TCCA's decision under the AEDPA, and after a

6

thorough review of the state court record, the Court concludes that Petitioner cannot meet the

high threshold of the unreasonable-application prong of section 2254(d)(1).

## IV. DISCUSSION

### A.  Constitutionality of Texas Penal Code § 22.011(b)(10)

In his first ground for relief, Petitioner asserts Texas Penal Code section 22.011(b)(10),

the statute under which he was convicted, is unconstitutional on its face and as applied, because

it is overbroad and vague, and violates the Establishment Clause.  He "does not challenge the

constitutionality of section 22.011 of the Texas Penal Code as it proscribes sexual assault, but

only section 22.011(b)(10)'s  negation of consent to sexual conduct."  (Doc. 1, Mem. at 10.)  The

referenced section provides that a sexual assault is without the consent of the other person if "the

actor is a clergyman who causes the other person to submit or participate by exploiting the other

person's emotional dependency on the clergyman in the clergyman's professional character as

spiritual adviser."  Tex. Pen. Code § 22.011(b).[2]

1.  Facial Challenge

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982),

set out the applicable procedure for analyzing a facial challenge to the overbreadth and vagueness

---

[2] Section 22.011(b) lists circumstances under which sexual activity between adults is not or cannot be deemed to be consensual, and targets individuals – including public servants, mental health services providers, clergymen, and employees of a facility where the victim is a resident – who by virtue of their position can take advantage of another's reliance and trust in their position to compel him or her to engage in sexual activity.  *See* Section 22.011(b)(8)-(11).  The remaining sub-parts of section 22.011(b) target individuals who use or threaten to use physical force or who are aware the other person is unable to consent.  *See* Section 22.011(b)(1)-(7).  Under section 22.011(b), there is no assent-in-fact under Texas law because either the victim did not assent and could not physically resist, the victim did not have the *ability* or *mental capability* to give consent, or the victim was forced or coerced into submitting.

of a law. *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 548 (5th Cir. 2008).

The first step is the overbreadth analysis, in which the court must

> . . . determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications.

*United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009) (quoting *Hoffman*, 455 U.S. at 494-95),

*cert. denied*, 130 S. Ct. 1306 (2010); *see also Ferguson v. Estelle*, 718 F.2d 730, 732-35 (5th Cir.

1983) (*per curiam*) (applying same standard in section 2254 habeas case raising facial challenge

to state criminal statute under First Amendment).

### a. Overbreadth

Petitioner's overbreadth argument is fatally flawed because "the overbreadth doctrine is

applicable only to First Amendment challenges." *Clark*, 582 F.3d at 612 (citing *United States v.*

*Salerno*, 481 U.S. 739, 745 (1987) ("[W]e have not recognized an 'overbreadth' doctrine outside

the limited context of the First Amendment.")). Here, section 22.011(b)(10) does not implicate

First Amendment rights, and none of Petitioner's claims raise a challenge on First Amendment

grounds. (Doc. 1, Mem. at 10-13.) Therefore, the state court's denial of Petitioner's overbreadth

claim was a reasonable application of federal law. *See Coleman v. DeWitt,* 282 F.3d 908, 914

(6th Cir. 2002) (affirming denial of section 2254 overbreadth claim because petitioner did not

challenge the statute under which he was prosecuted on First Amendment grounds).

### b. Vagueness

Petitioner's vagueness challenge fares no better. A law is vague in all its applications

when "it subjects the exercise of a right . . . to an unascertainable standard," or when "men of

common intelligence must necessarily guess at its meaning." *Roark & Hardee*, 522 F.3d at 547 (internal quotation marks and citations omitted).  Moreover, "to be unconstitutionally vague, a statute must be 'impermissibly vague in all its applications,' including its application to the party bringing the vagueness challenge." *Clark*, 582 F.3d at 612-13 (quoting and citing *Hoffman*, 455 U.S. at 495; *Roark & Hardee*, 522 F.3d at 546-47, 551 n.19).  In making the above determination, "'a reviewing court should examine the complainant's conduct *before* analyzing other hypothetical applications of the law because a [party] who engages in some conduct that is *clearly* proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Roark & Hardee*, 522 F.3d at 546 (internal quotation marks and citations omitted) (emphasis in original).  "Where constitutionally protected conduct is not threatened and 'at least some of [the defendant's] conduct is clearly proscribed' by the statute under review, it cannot be void for vagueness." *Clark*, 582 F.3d at 613 (quoting *Roark & Hardee*, 522 F.3d at 547).

Accordingly, this Court begins by reviewing Petitioner's conduct.  Petitioner claims that he was not a "clergyman" and that he did not have notice that the conduct giving rise to the sexual assault at issue exposed him to criminal liability.  (Doc. 1, Mem. at 33.)  Both assertions are meritless.  Although Petitioner was not compensated by the church he founded, and had a full-time job at a University unrelated to the ministry (Doc. 17 at 10), the record nonetheless reflects he was a clergyman.  Petitioner does not dispute the extensive testimony at trial, as summarized in Respondent's response, that he had graduated from a seminary and founded the church, performed all the preaching-teaching, wrote the curriculum, conducted funerals, and did all pastoral counseling.  (Doc. 12 at 15.)  He also conducted weddings, including that of Downey and her fiancé.  Under Texas law, the only persons authorized to conduct a wedding ceremony

are "a licensed or ordained Christian minister or priest; (2) a Jewish rabbi; (3) a person who is an officer of a religious organization and who is authorized by the organization to conduct a marriage ceremony;" and judges, V.T.C.A., Family Code § 2.202, strongly suggesting that Petitioner held himself out as a licensed or ordained minister.

Likewise, it is patently clear from the trial testimony, discussed in more detail below, that Petitioner misused his position as the church's pastor, in particular his role as a spiritual advisor, to manipulate and take advantage of the complainant's "emotional dependency" on him. *See Hornbuckle v. State*, 2008 WL 2168007, *4 (Tex. App. – Fort Worth, May 22, 2008, pet. ref.) (evidence indicated that defendant, in his role as complainant's bishop, caused her to submit to his sexual advances by exploiting her emotional dependence on him as her spiritual advisor). Because Petitioner's behavior falls squarely within the purview of section 22.011(b)(10), his challenge of section 22.011(b)(10) as applied to him necessarily fails. *See Ferguson*, 718 F.2d at 735 ("a petitioner will not be permitted to challenge a statute for imprecision if his own conduct is clearly within the core of proscribed conduct").

Even if the Court were to address Petitioner's facial vagueness challenge, it also falls short. Petitioner does not establish "that an ordinary person cannot understand what conduct [section 22.011(b)(10)] prohibits or that the statute encourages arbitrariness and discrimination by law enforcement." *Clark*, 582 F.3d at 614 and n.10 (collecting cases).

Section 22.011(b)(10) removes consent *only* when a clergyman, while acting as a "spiritual adviser," exploits a "person's emotional dependency" on him causing the other person to participate in sexual activity. The fact that the statute fails to define "clergyman" or "exploiting the other person's emotional dependency" (*see* Doc. 1, Mem. at 15-33) does not

render it unconstitutionally vague on its face.  Relying on the plain meaning of those terms,[3]

ordinary people can understand what conduct is prohibited under section 22.011(b)(10).

Moreover, the requirement of proof beyond a reasonable doubt that the actor actually <u>exploited</u>

the victim's emotional dependence, ensures that section 22.011(b)(10) does not criminalize all

sexual activity of a clergyman, such as when, as Petitioner suggests, a clergyman gives spiritual

advice to his spouse or non-spouse prior to engaging in sex.  (*See* Doc. 1, Mem. at 13, 16.)[4]

In summary, because section 22.011(b)(10) specifies a standard that is readily discernable

and not unduly vague, and Petitioner cannot establish that enforcement of the statute is arbitrary

or discriminatory, Petitioner's facial vagueness challenge fails.  The state court's denial of this

ground was a reasonable application of federal law.

2.  <u>Establishment Clause Challenge</u>

Petitioner asserts section 22.011(b)(10) violates the Establishment Clause of the First

Amendment because its standards are not secular and incorporate religious doctrine.  A statute

violates the Establishment Clause if (1) it does not have a secular purpose, (2) its principal or

primary effect advances or inhibits religion, or (3) it creates excessive government entanglement

with religion.  *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971); *see also Croft v. Perry*, 624

F.3d 157, 166 (5th Cir. 2010) (in-school prayer case).

At the outset, the Court notes that Petitioner's Establishment Clause argument wholly

---

[3]  For example, according to one dictionary definition, to exploit, means "to make productive use of" or "to make use of meanly or unfairly for one's own advantage."  Merriam-Webster's Collegiate Dictionary 409 (10th ed. 2001).

[4]  The Court notes that section 22.011(b)(10) parallels section 22.011(b)(9), which deems sexual activity non-consensual when a health care or mental health care provider exploits the emotional dependency of his patient.

lacks support.  (Doc. 1, Mem. at 33-36.)  The two and one-half page presentation of the claim

fails to cite any relevant legislative history or applicable case law, and merely makes cursory

reference to the first factor of the *Lemon* test (no secular purpose).  *Cf. United States v. Scott*, 202

F.3d 265, 1999 WL 1131952, *1-2 (5th Cir. 1999) (unpublished *per curiam*) (reviewing

legislative history in detail).  Nevertheless, Petitioner's Establishment Clause challenge fails

because Petitioner has not shown that section 22.011(b) unnecessarily entangles religion.

Focusing only on subsection (b)(10), Petitioner asserts the statute lacks a secular purpose

because it criminalizes only the conduct of clergy.  (Doc. 1, Mem. at 34.)  Petitioner's

perspective is unduly narrow, however, and disregards the ten other subsections of section

22.011(b) – (1) through (9) and (11) – which clearly have a valid secular purpose.  As a whole,

section 22.011(b) proscribes certain conduct of a number of individuals, including public

servants, mental health services providers, health care services providers, clergymen, and

employees of a facility where the victim is a resident.  In addition to that of a clergyman and his

congregant, section 22.011(b) takes into consideration the potential for exploiting certain other

sensitive relationships, such as that between a health services provider and his patient.  Its secular

motive, thus, is apparent.

In addition, Petitioner wholly fails to support his assertion that section 22.011(b)(10)

"establishes legislatively-determined facts that need not be proven at trial or decided by a jury."

(Doc. 1, Mem. at 34.)  He merely states the statute creates an "irrebutable presumption that all

clergy-advisee relationships have the same religious attributes."  (*Id.* at 34-35.)  The Court finds

unpersuasive Petitioner's conclusory contention that "the statute is violated solely or primarily

because of the religious identity of the actor or the religious nature of the relationship."  (*Id.* at

35.)  As previously stated, section 22.011(b)(10) does not criminalize all clergy-advisee

relationships.  It only establishes a boundary for effective consent: there is no consent when a

clergyman exploits the emotional dependence of one she or he counsels.  Clergymen who do not

take advantage of another's emotional dependence to engage in sexual activity, do not run afoul

its provision.

Because section 22.011(b)(10) does not unnecessarily entangle religion, Petitioner's

Establishment Clause challenge has no merit.  The state court's denial of this ground was a

reasonable application of federal law.

In summary, Petitioner cannot show the state court's decision to deny his constitutional

challenge to section 22.011(b)(10) was contrary to, or involved an unreasonable application, of

clearly established federal law.  Accordingly, his first ground should be denied.

**B.  Ineffective Assistance of Counsel**

Under the AEDPA, the Court reviews Petitioner's ineffective assistance of counsel claims

under a "doubly deferential" standard.  *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1403

(2011).  The Court "take[s] a 'highly deferential' look at counsel's performance," under

*Strickland v. Washington*, 466 U.S. 668, 689 (1984), "through the 'deferential lens of §

2254(d).'" *Cullen*, 131 S. Ct. at 1403 (quoted cases omitted).

1.  Ineffective Assistance of Counsel on Appeal

In his second ground, Petitioner asserts appellate counsel's decision to file an *Anders*

brief, instead of submitting a merits brief (addressing the constitutionality of section

22.011(b)(10), the sufficiency of the evidence, and the trial court's decision to sustain the State's

objection to counsel's final argument that Petitioner was not a clergyman), amounted to

13

constitutionally ineffective assistance of counsel.

When a petitioner asserts that appellate counsel erroneously failed to file a merits brief, he can satisfy the first part of the *Strickland* test, by showing that a reasonably competent attorney would have found that at least one of his claims presented a non-frivolous issue. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). If the petitioner can make such a showing, he then must demonstrate prejudice, namely that there is "a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Id.*

Even assuming counsel rendered deficient performance in failing to file a merits brief, the Court cannot find the requisite prejudice. *See Smith,* 528 U.S. at 286 n. 14 (court need not address performance component if it is easier to dispose of ineffectiveness claim due to lack of prejudice).[5] Contrary to Petitioner's assertions, the claims that Petitioner contends counsel should have raised on direct appeal lack merit. As set out in detail above, Petitioner's constitutional challenge to section 22.011(b)(10) has no merit. Likewise, for the reasons stated below, Petitioner's legal and factual sufficiency claims and the trial court's decision to sustain the state's objection fail. Consequently, appellate counsel's failure to raise these issues on appeal would not have changed the outcome of Petitioner's appeal.

    a.  <u>Legal Sufficiency of the Evidence</u>

The relevant question when reviewing a sufficiency of the evidence challenge in a section 2254 proceeding is whether "after viewing the evidence in the light most favorable to the

---

[5] Having presumed deficient performance for purpose of analysis, the Court need not address the applicability of *United States v. Garland,* 632 F.3d 877 (5th Cir. 2011) (summarizing *Anders*' minimum requirements in federal criminal appeals), in the context of a state criminal appeal. (*See* Doc. 21 at 1-9.)

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).  The federal habeas court gives "great weight" to a state court's determination that sufficient evidence supports the conviction.  *See Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir. 2000).  In conducting that review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the prosecution.  *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).

A review of the evidentiary record, summarized in Part II, *supra*, reflects that the evidence presented at trial was legally sufficient to permit a rational jury to find Petitioner guilty of sexual assault.  The evidence established Petitioner was the pastor of his own church who, while acting in the capacity of a spiritual advisor to one of his congregants, used her emotional dependence on him to cause her to participate in sexual activity.  Contrary to Petitioner's assertion, the evidence was sufficient to prove each element of the indictment.  As noted in *Hornbuckle*, section 22.011(b)(10) "requires only that the actor be a clergyman who causes the other person to submit or participate in the sexual activity while the clergyman is acting as a spiritual advisor."  *Hornbuckle*, 2008 WL 2168007, at *4.

Petitioner argues he "was not acting in his professional character as a spiritual adviser" to Christy Downey during the nights in question, but rather Christy Downey "was actually acting as [his] spiritual adviser and friend in an attempt to help him with his" marital problems, depression, and suicidal thoughts.  (Doc. 1, Mem. at 48.)  He claims Christy Downey was not

15

emotionally dependent on him at the time of the sexual activity, the sexual relationship did not occur during the performance of any pastoral duties, and the State failed to present evidence that Petitioner was exploiting Christy Downey's emotional dependency on him.  (*Id.* at 48-49.)

The Court finds these arguments unpersuasive.  Christy Downey testified at trial that Petitioner encouraged her to disclose intimate details about her personal life (including her father's suicide and how it affected her) while he was acting as her spiritual advisor, and that he used this private information to take advantage of her emotionally-dependent state.  She also testified that the night of the first sexual encounter, Petitioner initiated contact with her, calling from the parking lot of her apartment complex to say that he was coming by her apartment to pray with her.  Further, in manipulating Christy Downey, Petitioner caused her to believe that he was suicidal and that she could save him.  There is more than sufficient evidence in the record to support the jury's finding, implicit in its verdict, that Petitioner exploited Christy Downey's emotional dependence on him to gain her acquiescence in his sexual advances.

Because the evidence presented at trial was legally sufficient to find Petitioner guilty of sexual assault, appellate counsel's failure to raise this issue on appeal would not have changed the outcome of Petitioner's appeal.  The state court's denial of this ground was a reasonable application of federal law.

b. Factual Sufficiency of Evidence

Petitioner's factual sufficiency claim fares no better.  Under Texas state law in effect at the time of Petitioner's appeal, a state appellate court would have reviewed the factual sufficiency of the evidence in light of all the evidence, without the prism of "in the light most favorable to the prosecution," and would have set aside the verdict only if it was so contrary to

the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). This review must employ appropriate deference to prevent an appellate court from substituting its judgment for that of the fact finder, and any evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Jones v. State,* 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).

Relying on essentially the same reasons for arguing the case is legally insufficient, Petitioner asserts the evidence is factually insufficient to support his conviction. Considering the evidence under a neutral light, however, a jury was rationally justified in finding Petitioner guilty. Neither the alleged friendship between Christy Downey and Petitioner, nor his alleged marital problems and suicidal feelings undermined the verdict.

Because the evidence presented at trial was factually sufficient to find Petitioner guilty of sexual assault, appellate counsel's failure to raise this issue would not have changed the outcome of Petitioner's direct appeal. The state court's denial of this ground was a reasonable application of federal law.

c. Trial Court's Decision to Sustain the State's Objection

Lastly, Petitioner claims that the trial court's decision to sustain the State's objection to counsel's final argument (that Petitioner was not a clergyman because he was not ordained) "effectively prohibited Smith's attorney from arguing that the state did not prove this element." (Doc. 1, Mem. at 53.) This claim likewise lacks merit. As set out in detail above, Petitioner was a clergyman regardless of whether he was previously ordained. Thus, the argument was properly excluded as a misstatement of the law. Accordingly, appellate counsel's failure to raise this issue

17

would not have changed the outcome of Petitioner's appeal.  The state court's denial of this ground was a reasonable application of federal law.

In summary, Petitioner fails to show that the state court's decision to deny relief on his claims of ineffective assistance of appellate counsel was contrary to or involved an unreasonable application of *Strickland*.  No basis for habeas relief is shown and the second ground for relief should be denied.

2. Ineffective Assistance of Counsel at Trial

To establish ineffective assistance of trial counsel, a petitioner must also show both deficient performance by counsel and prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Again, this requires the petitioner to establish (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 688, 694.  The Court need not address both components if the petitioner makes an insufficient showing on one.  *Id.* at 697.  Under section 2254(d)(1) deference, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."  *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).[6]

_____

[6] In his reply, Petitioner urges the Court to consider *White v. Thaler*, 610 F.3d 890 (5th Cir. 2010), "in determining how much deference to give the Court of Criminal Appeals' rejection of the trial court's findings."  (Doc. 17 at 12.)  In *White*, the United States Court of Appeals for the Fifth Circuit concluded that the TCCA's determination of the *Strickland* deficiency prong did not merit AEDPA deference because the court "*assumed without deciding* that counsel's performance was deficient."  *Id.* at 899 (emphasis in original).  In this case, however, the TCCA concluded Petitioner could satisfy neither *Strickland* prong.  *See Ex parte Smith*, 2010 WL 456875, *1 (holding "Applicant has not meet [sic] his burden to show that he received ineffective assistance of counsel at any stage of his proceedings").  Thus, the TCCA's decision in this case is subject to AEDPA deference.  *See Charles v. Thaler*, 629 F.3d 494, 501 (5th Cir. 2011) (state court's finding that petitioner's counsel did not perform deficiently, and, even if counsel did,

a. Failure to make a Proper, Timely Objection to Dr. Gottlieb's Testimony

After the State rested, defense counsel moved to disregard the testimony of Dr. Gottlieb, the State's expert, because his opinions about events that occurred five years earlier were "basically unreliable and . . . just theory." 6 RR 164-65. The trial judge overruled counsel's motion, noting counsel had failed to object during the course of the expert's testimony and his objection was now untimely. *Id.* Relying on the untimeliness of the objection, Petitioner argues that counsel rendered ineffective assistance in failing to timely object to Dr. Gottlieb's testimony. (Doc. 1, Mem. at 55-60.)

During the first trial, as Respondent correctly notes, defense counsel timely objected to the introduction of Dr. Gottlieb's testimony in a motion to suppress evidence. SHCR (2389606) at 36-40. Following a *Sub Rosa* hearing, the trial court determined that Dr. Gottlieb's testimony was admissible under Texas Rule of Evidence 702. *Id.* at 41-64. Since all rulings on motions from the first trial were carried over to the second trial, 3 RR 4, defense counsel is deemed to have timely objected to the introduction of the expert's testimony. His conduct is not rendered deficient merely because he renewed the objection at the close of the State's case, and the trial judge erroneously found the renewed objection untimely.

Even assuming deficient performance, Petitioner cannot show prejudice. A review of the record reflects the trial court properly admitted Dr. Gottlieb's testimony. His area of expertise, emotional dependence between patients and mental health professionals, had relevance in the context of emotional dependence between a clergyman and parishioner. *See* Tex. R. Evid. 702 (an

---

petitioner suffered no prejudice, was sufficient for AEDPA deference to apply).

expert may testify if his "scientific, technical, or other specialized knowledge will assist the trier of fact").  As the trial judge concluded, Dr. Gottlieb had specialized knowledge to testify and his testimony could assist the jury to understand the evidence and determine the issues of fact.  SHCR (2389606) at 64.  Thus, Petitioner cannot establish the trial court would likely have excluded Dr. Gottlieb's testimony in light of the judge's explicit finding that it was, indeed, admissible.

The TCCA's application of the *Strickland* standard did not constitute a contrary to or an unreasonable application of clearly established federal law.

### b.  Failure to Object to Testimony of Kayla Smith

Petitioner asserts trial counsel was ineffective for failing to object to the testimony of Kayla Smith, Petitioner's wife at the time of the offense, that he was "obsess[ed] with sexual matters" and that he used "pornography, masturbation, [and] other things that [she] was ware of." 6 RR 145.  Relying on Rules 402, 403 and 404, of the Texas Rules of Evidence, Petitioner asserts Kayla's testimony was inadmissible because it had no relevance, it was submitted to portray Petitioner as engaging in deviant sexual behavior, and had no probative value.  (Doc. 1, Mem. at 62.)  Petitioner, however, has failed to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (citation omitted).  The Court agrees with Respondent that Kayla's testimony advanced the defensive theory at trial, that Petitioner committed adultery and was a womanizer, but that his conduct was not criminal.  Therefore, defense counsel's failure to object did not amount to deficient performance.  The state court's denial of this ground was a reasonable application of federal law.

c.   Failure to Raise the Issue of Corroboration

Next, Petitioner asserts counsel failed to request a jury instruction under Article 38.07 of

the Texas Code of Criminal Procedure, after the State failed to offer evidence corroborating

Christy Downey's testimony that Petitioner had sexually assaulted her.   That statute provides,

*inter alia*: "[a] conviction under Chapter 21, . . . Section 22.011 . . . is supportable on the

uncorroborated testimony of the victim of the sexual offense if the victim informed any person,

other than the defendant, of the alleged offense within one year after the date on which the offense

is alleged to have occurred."   Tex. Crim. Proc. Code Ann. § 38.07 (West 2011).   Article 38.07 is

inapplicable here where, contrary to Petitioner's assertion, he was not convicted upon the

uncorroborated testimony of the victim.   Matt Downey testified that Christy told him of the

assault and that Petitioner subsequently admitted to him that it was true.   6 RR 47-49.   Moreover,

Kayla Smith, Petitioner's wife at the time of the offense, testified that he admitted to her that he

had a sexual relationship with Christy Downey.   6 RR 144.   "In determining if corroborating

evidence exists, courts look to whether there is any evidence tending to connect the defendant

with the commission of the offense."   *Carmell v. State*, 26 S.W.3d 726, 728 (Tex. App.– Fort

Worth 2000) (citing *Scoggan v. State*, 799 S.W.2d 679, 681 n. 5 (Tex. Crim. App. 1990)).

Although there was not evidence corroborating every element of the offense of conviction, there

was more than sufficient evidence tending to connect Petitioner with the commission of sexual

assault against Christy Downey.

Moreover, raising lack of corroboration at trial would have contradicted the defensive

theory that the sexual activity was consensual.   5 RR 11.   Again, there is a presumption that not

challenging the fact that sexual activity occurred between Petitioner and Christy Downey was

"sound trial strategy" – a presumption Petitioner has not overcome here.  *Strickland*, 466 U.S. at 689 (citation omitted)

Defense counsel's failure to raise the corroboration issue did not fall below an objective standard of reasonableness and, thus, was not deficient.  Thus, the state court's denial of relief on this ground was a reasonable application of federal law.

### d.  Denigrating Comments Regarding Petitioner

Likewise, Petitioner cannot overcome the presumption that counsel's decision to label him a womanizer with a sexual addiction was "sound trial strategy."  *Strickland*, 466 U.S. at 689 (citation omitted).  As noted above, the defense wanted to show the sexual activity between Petitioner and Christy Downey was consensual, not criminal.  As such, it was reasonable strategy for counsel to argue that Petitioner was an adulterer and a womanizer, and that he had sexual addictions, for which he had sought and received treatment.  In light of this, counsel's comments did not amount to deficient performance.  The state court's denial of this ground was a reasonable application of federal law.

### e.  Failure to Adequately Raise Constitutionality of Section 22.011(b)(10)

In his last ground, Petitioner contends defense counsel was ineffective for failing to raise adequate arguments and file a pre-trial habeas corpus writ challenging the constitutionality of the sexual assault statute.  It is undisputed that counsel challenged the constitutionality of the statute during the first trial (by written motion and orally), as well as during the second trial (orally at a pretrial hearing), and that the court overruled all his arguments.  SHCR (2389606) at 66-68; 3 RR 4-6.  The fact that counsel was unsuccessful in his efforts does not mean that he was deficient. *See Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983) (*per curiam*).  The Court finds

22

unpersuasive Petitioner's conclusory assertion that had counsel raised the issue in a pretrial habeas writ, the state court would have found the statute unconstitutional.  In addition, in light of the lengthy discussion *supra* that his constitutional challenge has no merit, Petitioner cannot show any prejudice.  Therefore, counsel did not render constitutionally ineffective assistance and the state court's denial of this ground was a reasonable application of federal law.

In summary, Petitioner fails to show that the state court's decision to deny relief on his claims of ineffective assistance of trial counsel was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Because no basis for habeas relief is shown, Petitioner's third ground for relief should be denied.

## V.  RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED**.

SIGNED September 7, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

23

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

24